| | |
|---|---|
| **DENISE OTTO,** | Civ. No. 17-cv-3424 (KM)( MAH) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **JUDICIARY COURTS OF THE STATE OF NEW JERSEY, THE OFFICE OF THE ADMINISTRATOR OF THE COURTS, SUPREME COURT OF NEW JERSEY, SUPERIOR COURT OF NEW JERSEY OFFICE OF FORECLOSURE, SUPERIOR COURT OF NEW JERSEY ESSEX COUNTY VICINAGE, JUDGE KENNETH S. LEVY, JUDGE DAVID M. KATZ, JUDGE PAUL INNES, ARMANDO B. FONTOURA, WELLS FARGO BANK, N.A.; U.S. BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR BNC MORTGAGE LOAN TRUST 2006-2, PHELAN HALLINAN DIAMOND & JONES, PC, LAWRENCE T. PHELAN, ROSEMARIE DIAMOND, FRANCIS S. HALLINAN, JOHN HABERMANN,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Denise Otto entered into a $160,000 mortgage in 2006. In 2011, she defaulted, and ultimately a judgment of foreclosure was entered. *U.S. Bank, etc. v. Otto*, No. F-026230-12 (N.J. Super. Ct., Ch. Div. Essex Cty.). Otto, as borrower and property owner, sues the courts, the judges, the sheriff, the

1

opposing attorneys, her mortgagee, and others.[1] This is her second federal action attempting to undo the foreclosure or seek damages based on the mortgage default and the proceedings surrounding the foreclosure. Before the court is the motion of the three defendants who have been served and have appeared to dismiss the current action. For the reasons stated herein, the motion to dismiss will be granted.

## I.    Procedural Background

### A. Mortgage and State foreclosure judgment

On November 13, 2012, U.S. Bank filed a foreclosure action in the Superior Court of New Jersey, Chancery Division, Essex County. (*U.S. Bank, etc. v. Otto,* No. F-026230-12. (ECF no. 3-3) U.S. Bank was represented in the foreclosure by Phelan Hallin & Diamond, PC, named as a defendant here.

The complaint in foreclosure alleged as follows: On August 30, 2006, Denise Otto and Eugene I. Otto entered into a $160,000 note and mortgage with BNC Mortgage, Inc., secured by their property at 139-141 Western Parkway in Irvington. On January 16, 2009, the mortgage was assigned to U.S. Bank National Association, as Trustee for BNC Mortgage Loan Trust 2006-2. On September 18, 2012, it was again assigned to U.S. Bank National Association, as Trustee for BNC Mortgage Loan Trust 2006-2, Mortgage Pass-Through Certificates, Series 2006-2. Otto failed to make the monthly mortgage payment due on June 1, 2011, and all payments thereafter, and the mortgage went into default. Due notice of default was given.

---

[1]     The defendants named in this action fall into four broad categories:

(a)  The State judiciary, the courts, and state judges. ("Judiciary defendants")

(b) The (former) Essex County sheriff, Mr. Fontura (the "Sheriff").

(c) Wells Fargo Bank as mortgagee and U.S. Bank as trustee for a mortgage loan trust (the "Bank defendants").

(d) The Phelan law firm, which represented the mortgagee bank in the foreclosure, and individual attorneys of that firm (the "Law Firm defendants").

On August 12, 2014, the court entered a final judgment of foreclosure in the amount of $236,762.78, plus interest and counsel fees. A sheriff's sale was ordered.

## B.   The Prior Federal Action

This action must be understood in the context of a prior, dismissed action, *Otto v. Wells Fargo*, Civ. No. 15-8240 (the "Prior Federal Action"). In that action, Ms. Otto sued the the Bank defendants and the Law Firm defendants. (Categories (c) & (d). *See* n.1, supra.) That action was based on matters arising from the same mortgage and the state court judgment of foreclosure upon which this action is based.[2]

Ms. Otto filed the complaint in the Prior Federal Action on November 24, 2015, some 15 months after the entry of final judgment in the state foreclosure action. It had six Counts:

Count 1:   Rescission under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635

Count 2:   Enforcement of rescission under 15 U.S.C. § 1638(a)(1)

Count 3:   Enforcement of rescission under 12 C.F.R. § 226.23

Count 4:   Assertion that the three-year deadline on rescission has not run because loan not consummated

Count 5:   Violation of criminal statute, 15 U.S.C. § 1511, by Wells Fargo and the Phelan firm

Count 6:   Restitution under 12 C.F.R. § 1026.23

In the Prior Federal Action, I filed an order and opinion ("Prior Op.") (*Otto v. Wells Fargo Bank*, Civ. No. 15-8240, 2016 WL 8677313 (July 15, 2016), *aff'd*, 693 F. App'x 161 (3d Cir. May 31, 2017), which granted motions to

---

[2]   The complaint in the Prior Federal Action named the Phelan firm, but the current action also names certain of the Phelan firm attorneys individually. In the Prior Federal Action, Otto did not sue the Judiciary defendants or the Sheriff (categories (a) and (b), *supra*).

dismiss the complaint with prejudice. A copy of that prior Opinion is attached to this Opinion as an appendix.

First, I dismissed the action under the *Rooker-Feldman* doctrine to the extent that it sought to attack the validity of the mortgage or the other merits issues decided by the state court judgment of foreclosure. (Prior Op. 5–8)

Second, and relatedly, I applied *res judicata,* and in particular the New Jersey entire controversy rule, to dismiss any claims that were or could have been asserted in the state court foreclosure action. (Prior Op. 9–14)

Third, I held in the alternative that the complaint did not state a claim in several particulars. The claim under the Truth in Lending Act ("TILA") had not been brought within the one-year statute of limitations. Any claim against parties or their attorneys based on positions taken in the state court were barred by the litigation privilege. A criminal statute cited as the basis of a claim, 15 U.S.C. § 1611, does not give rise to a civil cause of action. (Prior Op. 14–15)

My decision dismissing the Prior Federal Action was affirmed by the United States Court of Appeals for the Third Circuit. (Docket No. 16-3385, 693 F. App'x 161 (3d Cir. May 31, 2017)

### C.   This Action

On May 12, 2017, Ms. Otto filed this federal court action. In this action, as noted above, Ms. Otto has sued four broad categories of defendants (*see* n.1, *supra*), based on matters surrounding the mortgage, the default, and the foreclosure. This new action names the Bank Defendants (c) and the Law Firm Defendants (d), who were also sued in the Prior Federal Action. It adds the Judiciary Defendants (a) and the Sheriff (b), who were not sued in the Prior Federal Action. As to the Judiciary and Law Firm defendants in categories (a) and (d), no proof of service has been filed, and they have not appeared. The Sheriff (b) has appeared, as have the Bank defendants (c).

4

The Complaint contains a great deal of material in the factual allegations, much of it unconnected to any cause of action. The causes of action pled, however, are as follows:

| | |
|---|---|
| Count 1: | Violation of the Civil Rights Act of 1866 (equal rights with respect to property without regard to race) |
| Count 2: | Violation of the Civil Rights Act of 1866 (involuntary servitude) |
| Count 3: | Violation of Universal Declaration of Human Rights |
| Count 4: | Conflict of interest and lack of neutrality of State of New Jersey and New Jersey Courts |
| Count 5: | Fraudulent concealment |
| Count 6: | Covenant of good faith and fair dealing. |

The Complaint seeks $50,000,000 in "lawful money" as damages.

### D.   Motion to Dismiss and Order to Show Cause

On June 20, 2017, the Bank Defendants (Wells Fargo and U.S. Bank) filed a motion to dismiss the Complaint for lack of jurisdiction and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF no. 9) That motion is joined by the Sheriff. (ECF no. 10)

On October 4, 2017, I filed an Order to Show Cause providing that if the plaintiff did not file an opposition to the motion to dismiss within 21 days, it might be treated as unopposed and granted. (ECF no. 14)

On October 24, 2017, Ms. Otto filed what is deemed a response. (ECF no. 17) It states that "[a]t this time Otto believes that filing of any opposition to the motion to dismiss her complaint . . . is a waste of time and a futile attempt to bash her head against the proverbial wall of the so called justice of this particular district court who without a doubt in order to protect the criminal activity of the likes of a nationally known criminal enterprise such as Wells Fargo Bank, N.A., who admittedly and knowingly forged millions of customer signatures and fraudulently without customers' knowledge opened millions of

fraudulent bank accounts, would claim lack of jurisdiction or failure to state a claim or some other excuse just to dismiss Otto's Civil Rights case." (*Id.* at 2–4) In support, Ms. Otto cites the Magistrate Judge's grant of the letter request of defense counsel to suspend the discovery schedule pending resolution of the motion to dismiss. (*See* ECF nos. 11, 12, & 13) She states that the Magistrate Judge belongs to the "same attorney bar club" as Mr. Bender, counsel for the Bank Defendants. No further response on the merits of the motion has been filed.[3]

## II.   Standard on a motion to dismiss

My opinion in the Prior Federal Action (attached) states the relevant standards on a Rule 12(b)(1) or Rule 12(b)(6) motion to dismiss. They will not be repeated here. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face.") *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *In re: Lipitor Antitrust Litigation*, 868 F.3d 231, 249 (3d Cir. 2017) (heightened Rule 9(b) standard for pleading fraud claim). I have given the allegations the liberal construction due a *pro se* pleading. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013).

## III.   Analysis

Otto has filed no substantive opposition to the motion to dismiss. Beyond that, she has affirmatively waived any such opposition, declaring it to be futile. *See* Section I.D, *supra*. Still, the Court will address the merits, if only briefly. *See Jones v. Unemployment Comp. Bd. of Review*, 381 F. App'x 187, 189 (3d Cir. 2010); *Smith,* 2017 WL 2560348 at *2.

---

3     Grounds for recusal of Judge Hammer do not remotely appear to be present in these allegations. *See generally* 28 U.S.C. § 455; *Liteky v. United States,* 510 U.S. 540 (1994). But in any event, nothing about these allegations bears upon the appropriateness of my ruling on this motion to dismiss.

This analysis should be read in the context of my opinion dismissing the Prior Federal Action, a copy of which is attached. In addition, I rely on the opinion of Chief Judge Linares in *Smith v. New Jersey, et al.,* a case in which the complaint was a virtual duplicate of the Complaint here, except for the names of certain parties. Civ. No. 17-443, 2017 WL 2560348 (D.N.J. June 12, 2017). *Compare Smith* Second Amended Complaint, Dkt item no. 29-2, *with* Complaint in this action, ECF no. 1.

### A. *Rooker-Feldman*

Defendants first move, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss the complaint for lack of jurisdiction under the *Rooker-Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923).

A federal district court does not sit to hear appeals from state court judgments. *Rooker-Feldman* operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See also B.S. v. Somerset County,* 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.,* 544 U.S. 280, 284, 125 S.Ct. 1517 (2005).

The *Rooker-Feldman* doctrine applies when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir. 1996). Thus *Rooker-Feldman* holds that lower federal courts cannot entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision. *Feldman, supra; Rooker, supra; Guarino v. Larsen,* 11 F.3d 1151, 1156–57 (3d

Cir. 1993); *Port Auth. Police Benev. Ass'n v. Port Auth.*, 973 F.2d 169, 178 (3d Cir. 1992).

A final judgment of foreclosure was entered in New Jersey Superior Court on August 12, 2014. In the Prior Federal Action I held that this case involves a "state-court judgment[] rendered before the district court proceedings commenced." *Exxon Mobil*, 544 U.S. at 284. That is, if anything, even more true of the current action.

*Rooker-Feldman* bars any claims that were previously adjudicated in, or are inextricably intertwined with, that state foreclosure proceeding. Ms. Otto's federal causes of action share a common element: that the 2006 mortgage was never valid and that the foreclosure violated her rights. The state foreclosure judgment necessarily decided against Ms. Otto the following essential elements: the validity of the note and mortgage; the alleged default; and the mortgagee bank's right to foreclose (which would include its standing by assignment or otherwise). *See Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 394, 622 A.2d 1353, 1356 (Ch. Div. 1993). "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *FOCUS*, 75 F.3d at 840.

Ms. Otto's claims against the Bank Defendants arise from the alleged invalidity of the mortgage, an issue foreclosed by the State court judgment of foreclosure. Her claims against the Sheriff can only arise from his conducting, or planning to conduct, a sheriff's sale that was ordered as part of the judgment of foreclosure; they rest on the alleged invalidity of the judgment.

Ms. Otto's claims are claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. They are barred by *Rooker-Feldman*.

Nevertheless, to the extent any claim may be regarded as independent of the foreclosure, I consider other grounds for dismissal.[4]

**B.    Other Grounds**

*Count 1:*    Violation of the Civil Rights Act of 1866 (equal rights with respect to property without regard to race)

*Count 2:*    Violation of the Civil Rights Act of 1866 (involuntary servitude)

As to the first claim, the complaint pleads no facts that suggest any racial or discriminatory animus on the part of the Bank Defendants or the Sheriff. The second claim seems to rest primarily on the theory that Federal Reserve Notes are not legal tender, so that the mortgagee bank's demand for repayment imposes "involuntary servitude." I know of no legal authority for such a claim.[5]

*Count 3:*    Violation of Universal Declaration of Human Rights

There is no private cause of action for violation of the Universal Declaration of Human Rights. *See United States v. Chatman,* 351 F. App'x 740, 741 (3d Cir. 2009) (citing *Sosa v. Alvarez-Machain,* 542 U.S. 692, 734 (2004)).

*Count 4:*    Conflict of interest and lack of neutrality of State of New Jersey and New Jersey Courts

This count appears to be pled only against the Judiciary Defendants.

*Count 5:*    Fraudulent concealment

---

[4]    Parallel to the *Rooker-Feldman* analysis, but not jurisdictional, are doctrines of *res judicata,* collateral estoppel, and the entire controversy rule. These furnished part of the basis for my dismissal of the Prior Federal Action. (*See* Opinion, attached.) Such grounds would only be strengthened by the fact that this is a second federal action on the same subject matter.

[5]    The Complaint alleges that there are no U.S. Dollars as defined by the Coinage Act of 1792 currently in circulation, and that her debt, because payable in Federal Reserve Notes, is therefore fraudulent and invalid. (Cplt. pp. 37–38 ¶¶ 87–92) However, the plaintiff used this loan, denominated in U.S. dollars, to purchase her home.

In general, a fraud claim requires that a plaintiff allege, as to each defendant, "(1) a material misrepresentation of presently existing or past fact; (2) knowledge or belief by the Defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). These particulars are not alleged.

To some degree, this Count appears to be a repackaging of the other causes of action described above. It obscurely alleges that a check was not returned to plaintiff. Plaintiff also complains of the use of her mortgage as part of a securitization, but never specifies how this injured her—for example, caused her to owe or pay any amount she would not otherwise have owed or paid. Although replete with references to misrepresentations, false and fraudulent documents, and allegations about Wells Fargo seemingly drawn from news accounts, the Complaint nowhere intelligibly identifies the who, what, when, where, and how of any fraud committed against this plaintiff. *See generally In re: Lipitor Antitrust Litigation*, 868 F.3d 231, 249 (3d Cir. 2017) (heightened Rule 9(b) standard for pleading fraud claim).

 *Count 6:* Covenant of good faith and fair dealing.

Under New Jersey law, every contract is deemed to contain an implied covenant of good faith and fair dealing. *See Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997); *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 169-70 (3rd Cir. 2001). A cause of action may lie where a party's acts "have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002) (internal quotations and citation omitted). "[P]roof of bad motive or intention is vital to an action for breach of the covenant." *Westmont Dev. Grp., LLC v. Twp. of Haddon*, 625 F. Supp. 2d 178, 195 (D.N.J. 2009) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005)).

The contract at issue is not specified, but presumably it would consist of the loan papers. Acting to foreclose on a mortgage that is in default is not wrongful. The complaint, despite its length, fails to allege any manner in which, for example, plaintiff's default on the mortgage was brought about by some bad faith, improperly motivated act of the defendant. The plaintiff here was not unfairly deprived of the fruits of the parties' agreement.

### C.   Other Defendants

The causes of action as pled against the remaining defendants have obvious facial defects, such as Eleventh Amendment or judicial immunity. *See Smith, supra* (discussing the issues in relation to a substantively identical complaint). As to those defendants, however, no proofs of service have been filed, and they have not appeared.

The Complaint was filed on May 12, 2017. These defendants were not served within 90 days, as required by Fed. R. Civ. P. 4(m). No explanation, good or bad, has been proffered by the plaintiff. I will therefore dismiss the Complaint, without prejudice, as against the remaining defendants.

### CONCLUSION

The Motion of the Bank Defendants, joined by the Sheriff, to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction under the *Rooker-Feldman* doctrine, and in the alternative under Rule 12(b)(6) for failure to state a claim, is therefore GRANTED. Because this is a second action based on the same subject matter, and because the plaintiff has declined to respond in any way to the motion to dismiss, the dismissal is with prejudice. As to the remaining defendants, who have not been served and have not appeared, the dismissal is without prejudice.

Dated: January 16, 2018

KEVIN MCNULTY
United States District Judge

# APPENDIX

Court's Opinion in *Otto v. Wells Fargo*, Civ. No. 15-8240,
2016 WL 8677313 (July 15, 2016),
aff'd, 693 F. App'x 161 (3d Cir. May 31, 2017)

2016 WL 8677313
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

Denise OTTO, Plaintiff,

v.

WELLS FARGO BANK, N.A.; Mortgage Electronic Registration Systems, Inc.; U.S. Bank, N.A., as
Trustee for BNC Mortgage Loan Trust 2006-2; Phelan Hallinan, LLP a/k/a Phelan Hallinandiamond &
Jones, P.C. a/k/a Phelan Hallinan Diamond, P.C. a/k/a Phelan Hallinan & Schmieg, P.C., Defendants.

Civ. No. 15-cv-8240 (KM)(MAH)
|
Signed 07/15/2016

**Attorneys and Law Firms**

Denise Otto, Irvington, NJ, pro se.

Aaron M. Bender, Reed Smith, Princeton, NJ, Diane A. Bettino, Reed Smith, LLP, Pittsburgh, PA, Sonya Gidumal
Chazin, Phelan Hallinan Diamond and Jones, Mt. Laurel, NJ, for Defendants.

## OPINION

KEVIN MCNULTY, United States District Judge

### I. Introduction

*1 This federal court action, filed on November 24, 2015, arises from a state court mortgage foreclosure action which
went to final judgment on August 12, 2014. Denise Otto, as borrower and property owner, sues her mortgagee, U.S.
Bank. In essence, her causes of action seek to undo the state court judgment of foreclosure. She also sues the attorneys
who represented the mortgagee in the foreclosure and others. Now before the court are motions of U.S. Bank and the
attorneys to dismiss the complaint. (ECF nos. 3, 14) Because this action is barred by the *Rooker-Feldman* doctrine and
principles of *res judicata*, because the statute of limitations has run, and because the complaint otherwise fails to state a
claim, the motions are granted, and the complaint will be dismissed with prejudice.

#### A. Mortgage and State foreclosure judgment

On November 13, 2012, U.S. Bank filed a foreclosure action in the Superior Court of New Jersey, Chancery Division,
Essex County. (*U.S. Bank, etc. v. Otto*, No. F-026230-12. (ECF no. 3-3) U.S. Bank was represented in the foreclosure
by Phelan Hallin & Diamond, PC.

The complaint in foreclosure alleged as follows: On August 30, 2006, Denise Otto and Eugene I. Otto entered into
a $160,000 note and mortgage with BNC Mortgage, Inc., secured by their property at 139-141 Western Parkway in
Irvington. On January 16, 2009, the mortgage was assigned to U.S. Bank National Association, as Trustee for BNC
Mortgage Loan Trust 2006-2. On September 18, 2012, it was again assigned to U.S. Bank National Association, as
Trustee for BNC Mortgage Loan Trust 2006-2, Mortgage Pass-Through Certificates, Series 2006-2. Otto failed to make
the monthly mortgage payment due on June 1, 2011, and all payments thereafter, and the mortgage went into default.
Due notice of default was given. (*See* ECF no. 3-3)

On August 12, 2014, the court entered a final judgment of foreclosure in the amount of $236,762.78, plus interest and counsel fees. A sheriff's sale was ordered. (ECF nos. 3-4, 35) The record does not disclose whether the sale has been held.

### B. This federal court action

Ms. Otto filed this federal court action on November 24, 2015, some 15 months after the entry of final judgment in the state foreclosure action.

Count 1 seeks rescission under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635, because adequate disclosures were not given in connection with the loan in 2006. Otto alleges that "no consummation of the transaction between BNC and Plaintiff took place as one part to the transaction, the actual lender, is not disclosed to Plaintiff." The reference is apparently to U.S. Bank's subsequent assignment of the mortgage. Ms. Otto alleges that she sent a notice of rescission on August 15, 2015.

Count 2 seeks enforcement of rescission under 15 U.S.C. § 1638(a)(1). Count 3 seeks enforcement of rescission under 12 C.F.R. § 226.23. Count 4 asserts that the transaction was never consummated, and that therefore the three-year deadline on the right to rescind was never set in motion.

\*2 Count 5 asserts that Wells Fargo, as servicer, and the Phelan firm, as attorneys, violated a criminal statute, 15 U.S.C. § 1611, by pursuing the foreclosure and seeking a sheriff's sale on a loan that they knew had been validly rescinded.

Count 6 seeks restitution under 12 C.F.R. § 1026.23 based on the rescission.

### II. Standard on a motion to dismiss

Defendants have moved to dismiss the Complaint for lack of jurisdiction, citing, *inter alia*, the *Rooker-Feldman* doctrine (*see infra*). Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

Defendants have also moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly*, *see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In connection with the motions, defendants have attached records of the state court foreclosure proceeding. These are cited, not for the facts contained therein, but only in order to establish the nature and scope of prior proceedings between the parties, and the rulings of the state court. Such records are subject to judicial notice:

> *3 [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Where the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "pro *se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 Fed.Appx. 325, 328 (3d Cir. 2010) (citation omitted).

## Analysis

### A. *Rooker-Feldman*

Defendants first move, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss the complaint for lack of jurisdiction under the *Rooker-Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

A federal district court does not sit to hear appeals from state court judgments. *Rooker-Feldman* operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See also B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284, 125 S.Ct. 1517 (2005).

The *Rooker-Feldman* doctrine applies when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). Thus *Rooker-Feldman* holds that lower federal courts cannot entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision. *Feldman, supra; Rooker, supra; Guarino v. Larsen*, 11 F.3d 1151, 1156–57 (3d Cir. 1993); *Port Auth. Police Benev. Ass'n v. Port Auth.*, 973 F.2d 169, 178 (3d Cir. 1992).

This case involves a "state-court judgment[ ] rendered before the district court proceedings commenced." *Exxon Mobil*, 544 U.S. at 284. A final judgment of foreclosure was entered in New Jersey Superior Court on August 12, 2014. It was not until some fifteen months later, on November 24, 2015, that Ms. Otto filed this federal court action. [1]

**\*4** The question remaining is whether the claims in this federal court action were previously adjudicated in, or are inextricably intertwined with, that state foreclosure proceeding. All of Ms. Otto's federal causes of action share a common element: that the 2006 mortgage was never valid, that it could be rescinded at any time, and that it was rescinded.

The state foreclosure judgment necessarily decided in U.S. Bank's favor the following essential elements: the validity of the note and mortgage; the alleged default; and the Bank's right to foreclose (which would include its standing by assignment or otherwise). *See Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 394, 622 A.2d 1353, 1356 (Ch. Div. 1993). "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *FOCUS*, 75 F.3d at 840. As to federal actions following mortgage foreclosures, the case law gives some guidance as to what issues are actually adjudicated or inextricably intertwined.

*In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009), for example, considered a post-foreclosure federal claim, like this one, for rescission of the mortgage. A finding that no valid mortgage existed, the Court held, would eliminate the basis for the prior foreclosure judgment. Such a claim is an easy case for application of *Rooker-Feldman*. A federal claim that the state foreclosure court entered its judgment in the absence of personal jurisdiction is likewise barred by *Rooker-Feldman*. Because such a plaintiff "can only prevail if a federal court concludes that the state courts' default judgments were improperly obtained," his claim is inextricably intertwined with the state proceedings. *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005). *See also Ayres-Fountain v. E. Sav. Bank*, 153 Fed.Appx. 91, 92 (3d Cir. 2005) (barring post-foreclosure federal claim for rescission of mortgage and damages); *Moncrief v. Chase Manhattan Mortgage Corp.*, 275 Fed.Appx. 149, 153 (3d Cir. 2008) (barring a claim for "redress" of state court judgment in a foreclosure action).

Under these precedents, Ms. Otto's claims against the mortgagee defendants are clearly barred, as the issues essential to them were actually adjudicated in the state foreclosure action. To hold—as Ms. Otto asks this Court to do—that the mortgage was not valid, would in effect declare the foreclosure judgment to be invalid. It would be tantamount to a declaration "that the state courts' default judgments were improperly obtained." *Knapper*, 407 F.3d at 581.

That leaves the claims against Wells Fargo, as loan servicer, and Phelan Hallinan, the attorneys. These, too, rest on the assumption that the mortgage was invalid or rescinded. The alleged wrongfulness of these defendants' actions stemmed from their attempts to enforce in court what Ms. Otto deems to be an invalid mortgage. Thus they stand on the same footing as the claims against U.S. Bank.

Ms. Otto's claims are claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. They are barred by *Rooker-Feldman*.

### B. Other Grounds

**\*5** *Rooker-Feldman* should dispose of the matter as to any claim that is not "independent" of the merits of the foreclosure. To remove doubt, however, I briefly consider in the alternative some other grounds for dismissal under Rule 12(b)(6). 2[2]

### 1. Res judicata

Claims that survive scrutiny under *Rooker-Feldman* may nevertheless be barred by doctrines of *res judicata*. *See Ayres-Fountain*, 153 Fed.Appx. at 93 ("even if review of the complaint were not barred by *Rooker–Feldman*, we agree with the District Court that Ayres–Fountain's claims were barred by res judicata"). I find that to be the case here. Although *res*

*judicata* is an affirmative defense, it may be considered on a motion to dismiss if its applicability can be determined from the face of the complaint and documents properly considered on a Rule 12(b)(6) motion. *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). The New Jersey doctrines of claim preclusion and the entire controversy rule furnish additional and alternative grounds for dismissal.

### a. New Jersey doctrine of claim preclusion and the entire controversy rule

Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). Here, that state is New Jersey.

New Jersey claim preclusion law, like federal law, has three essential elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412, 591 A.2d 592, 599 (1991) (state law); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (federal law). If those three requirements are met, then the doctrine bars "the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen*, 449 U.S. at 94, 101 S. Ct. at 414; *Watkins*, 124 N.J. at 412, 591 A.2d at 599 ("Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined.")

Claim preclusion in the traditional sense tends to be subsumed by New Jersey's "entire controversy" rule. The entire controversy rule emphasizes, not just claims within the scope of the prior judgment, but all *claims and parties* that a party *could have joined* in a prior case based on the same transaction or occurrence. The entire controversy doctrine thus "requires a party to bring in one action 'all affirmative claims that [it] might have against another party, including counterclaims and cross-claims,' and to join in that action 'all parties with a material interest in the controversy,' or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 662 A.2d 509, 513 (1995)).

\*6 We have described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1172 (N.J. 1989); *see also* N.J. Const. art. VI, § 3, ¶ 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.*, 168 A. 796, 797 (N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon.") ....

*Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2014).

Like traditional res judicata, the state entire controversy doctrine applies in federal court "when there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). It extinguishes any subsequent federal-court claim that could have been joined, but was not raised in the prior state action:

> Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate
> later litigation even when the withheld component is a separate and independently cognizable cause
> of action. The doctrine has three purposes: (1) complete and final disposition of cases through

avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay. *See DiTrolio v. Antiles*, 142 N.J. 253, 662 A.2d 494, 502 (N.J. 1995). As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties.

*Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999).

The preclusive effect of the rule is explicit: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...." N.J. Ct. R. 4:30A. But the rule applies only to claims that could have been permissibly joined in the prior proceeding. And the entire controversy rule itself notes the limitations on claims in a foreclosure proceeding: "... except as otherwise provided by R. 4:64-5 (foreclosure actions) ...." *Id.*

The cited rule, N.J. Ct. R. 4:64-5, limits permissible claims in mortgage foreclosure actions to those which are "germane" to the foreclosure. [3] It follows, therefore, that only claims germane to the prior mortgage foreclosure will be precluded in a later action. If the litigant could not have brought non-germane claims in the prior action, then they cannot be precluded by the prior judgment.

**\*7** As to what claims are "germane," the seminal case is *Leisure Technology–Northeast v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96 (App. Div. 1975). "The use of the word 'germane' in the language of the rule," said the Appellate Division, "undoubtedly was intended to limit counterclaims in foreclosure actions to claims *arising out of the mortgage transaction* which is the subject matter of the foreclosure action." 349 A.2d at 98–99 (emphasis added). There, the foreclosure defendant/borrower had pled an affirmative defense and counterclaim. The Appellate Division held that "the thrust of the counterclaim is the assertion that plaintiff had breached the underlying agreement in relation to which the mortgage was executed and interfered with defendants' rights under that agreement. In the usually understood sense of the word, these claims were germane to the foreclosure action." 349 A.2d at 99.

Post-*Leisure Technology*, the germaneness rule has solidified thus:

> Indeed, the Appellate Division has been "clear that any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure." *Sun NLF Ltd. Partnership v. Sasso*, 313 N.J. Super. 546, 713 A.2d 538, 540 (N.J. Super. Ct. App. Div. 1998).

*Zebrowski v. Wells Fargo Bank, N.A.*, No. CIV.1:07CV05236JHR, 2010 WL 2595237, at \*6 (D.N.J. June 21, 2010) (Rodriguez, J.); *see also Joan Ryno, Inc. v. First Nat. Bank of S. Jersey*, 208 N.J. Super. 562, 570, 506 A.2d 762, 766 (App. Div. 1986).

A Third Circuit case persuasively penned by Judge Fuentes (himself a product of the New Jersey bench and bar) illustrates the "germaneness" issue as it bears on the entire controversy doctrine. In *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortgage Corp.*, 446 Fed.Appx. 469 (3d Cir. 2011), a foreclosure action went to final judgment. After bankruptcy-related delays that staved off a sheriff's sale, the borrower/owner paid a reinstatement fee and obtained a dismissal of the foreclosure. The borrower then brought a putative class action in federal court, claiming that the lender had charged excessive fees in connection with reinstatement. The district court, applying the entire controversy doctrine, dismissed the case on a Rule 12(b)(6) motion. The Third Circuit affirmed.

Judge Fuentes found that the borrower's claims could have been brought in the foreclosure under New Jersey practice:

> Claims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action. *Leisure Technology–Northeast, Inc. v. Klingbeil Holding*

        *Co.*, 137 N.J. Super. 353, 349 A.2d 96, 98 (1975). Here, Coleman's claims arose directly out of a reinstatement quote that was provided to her as an alternative to a foreclosure sale, and the excessive fees allegedly charged by Chase would not have been charged but for the foreclosure action. Accordingly, Coleman's causes of action arose out of and were germane to the original foreclosure action.

446 Fed.Appx. at 472. Because the claims would have been "germane" in the sense that they arose from the relevant mortgage transaction, they were now barred by the entire controversy doctrine. *See also Dennis v. MERS/Merscorp Mortgage Elec. Registration Sys., Inc.,* No. CIV.A. 11-4821 JLL, 2011 WL 4905711, at *1 (D.N.J. Oct. 13. 2011) (barring claims by plaintiff who had defaulted in state foreclosure action that "as a result of defective assignments of her mortgage, all claims to the property are void"). [4]

### b. Application to this case

**\*8** The entire controversy rule applies here. The state court mortgage foreclosure was "a previous state-court action involving the same transaction," *i.e.*, the mortgage, the default, and the foreclosure itself. *Bennun,* 941 F.2d at 163 (3d Cir. 1991). The subject matter of that prior action necessarily embraced that of this federal action, and the parties are the same (except for Phelan Hallinan, which was an attorney, not a party, in the earlier action, and is sued on that basis).

In the alternative, the three prerequisites to claim preclusion apply here.

(1) There was a final judgment on the merits.

(2) The prior suit involved the same parties or their privies.

(3) The subsequent suit (*i.e.*, this one) is based on the same transaction or occurrence. It grows out, and is based on, the validity, or not, of the mortgage. *Watkins,* 124 N.J. at 412, 591 A.2d at 599.

A claim that the mortgage transaction "was not consummated" or that the mortgage has been rescinded obviously bears direct on the merits of the mortgage foreclosure itself. It follows, then, that claim preclusion and the entire controversy doctrine extinguish any such subsequent federal-court claim that either was decided, or else could have been joined but was not raised in the prior foreclosure action. As to any claims that arguably survive *Rooker-Feldman,* the motion to dismiss on grounds of *res judicata* and the entire controversy rule would be granted.

### 2. Failure to state a claim

Finally, I consider whether the complaint states a claim under Rule 12(b)(6). In many important respects it does not, as a matter of law.

A claim for monetary damages under TILA, for example, has a one-year statute of limitations, which runs from the date of closing of the loan. *See* 15 U.S.C. § 1640(e); *In re Community Bank of Northern Virginia,* 622 F.3d 275, 303 (3d Cir. 2010). A request for rescission under TILA must be brought within three years. That is a firm deadline, *i.e.*, a statute of repose that is not subject to tolling. *See* 15 U.S.C. § 1635(f); *Community Bank,* 622 F.3d at 301 n.18; *Williams v. Wells Fargo Home Mtge., Inc.,* 410 Fed.Appx. 495, 499 (3d Cir. 2011). The limitation period runs from the loan closing on August 30, 2006. The damages claim therefore expired in 2007, and the rescission claim in 2009. Notice of rescission, according to the complaint, was served in 2015—six years after the last deadline had expired.

Ms. Otto claims that the transaction was "never consummated." By that she seems to mean that it was somehow self-rescinding in 2006. There is no legal support for that position, which would imply that the right to rescind remains open forever. Under established case law, the deadlines run from the closing of the challenged loan.

Claims based on positions taken in the state court litigation would face an additional barrier in the form of the litigation privilege. The litigation privilege "ensures that [s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability." *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 523 (D.N.J. 2012) (internal quotations and citations omitted). The privilege is "expansive" and "well-established" in New Jersey. *Id.* It applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.* (internal quotations and citations omitted). At any rate, no specific false statement is identified, other than those based on plaintiff's personal belief that the mortgage never was valid.

*9    Any claim under 15 U.S.C. § 1611, a criminal statute containing no civil cause of action, would likewise be doomed.

## CONCLUSION

Defendants' motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction under the *Rooker-Feldman* doctrine, and in the alternative under Rule 12(b)(6) for failure to state a claim, are therefore GRANTED, and the complaint is dismissed with prejudice.

## All Citations

Slip Copy, 2016 WL 8677313

Footnotes

1    That the sheriff's sale may not yet taken place does not detract from the judgment's finality for purposes of *Rooker-Feldman*. That the foreclosure judgment had been entered is sufficient to invoke *Rooker-Feldman*. Under New Jersey law, a mortgage foreclosure suit determines the right to foreclose and the amount due on the mortgage. *Sheerer v. Lippman & Lowy*, 125 N.J.Eq. 93, 4 A.2d 273 (E. & A. 1939); *Central Penn Nat'l Bank v. Stonebridge, Ltd.*, 185 N.J.Super. 289, 302, 448 A.2d 498 (Ch. Div. 1982). *See generally* 30A N.J. Prac. Law of Mortgages § 31.25. The foreclosure judgment also entitles the mortgagee to recover, by way of Sheriff's sale, the amount due from the land subject to the mortgage. *See* N.J.S.A. 2A:50–36; *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 383 N.J.Super. 562, 570, 893 A.2d 1 (App. Div. 2006) *rev'd on other grounds by* 190 N.J. 342, 921 A.2d 417 (2007). Indeed, the terms of a mortgage foreclosure judgment will include "an order to sell so much of the mortgaged premises as will be sufficient to satisfy the mortgage and subordinate liens ... and that an execution issue ... commanding the [sheriff] to make sale...." 30A N.J. Prac. Law of Mortgages § 31.25.

    *Patetta v. Wells Fargo Bank, NA*, Civ. No. 09-2848, 2010 WL 1931256, at *7 (D.N.J. May 13, 2010).

2    Where the federal plaintiff presents "some independent claim," *i.e.*, one that does not implicate the validity of the state court judgment, the *Rooker-Feldman* doctrine does not apply. *Exxon Mobil*, 544 U.S. at 292 (quoted in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547-48 (3d Cir. 2006)). Upon completing the *Rooker-Feldman* analysis and confirming that it possesses jurisdiction, the court should then consider "whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 292.

3    **4:64-5. Joinder of Claims in Foreclosure**

    Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and

guarantees. A defendant who chooses to contest the validity, priority or amount of any alleged prior encumbrance shall do so by filing a cross-claim against that encumbrancer, if a co-defendant, and the issues raised by the cross-claim shall be determined upon application for surplus money pursuant to R. 4:64-3, unless the court otherwise directs.

Claims that could not have been brought in the first proceeding also include those that were "unknown, unarisen, or unaccrued" at the time. *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 662 A.2d 523, 530 (1995) (citations omitted). Those exceptions are not implicated here.

The entire controversy rule applies to parties, as well as claims, that were not joined in the prior action. That aspect of the rule, too, is not relevant here. *See Ricketti, supra* (requiring particular safeguards as to absent parties).

4    A case reaching the opposite result is *In re Mullarkey*, 536 F.3d 215, 229-30 (3d Cir. 2008). There, however, the court determined that the plaintiff's federal cause of action truly arose, not from the foreclosure, but from alleged misrepresentations in related bankruptcy proceedings.

End of Document                                                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.